## Harris, County Judge, v. Rhodes.

(Decided May 30, 1930.)

L. C. FLOURNOY, J. W. CAMMACK, Attorney General, and HOWARD BLACK for appellant.

H. D. ALLEN, Jr., for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—Reversing.

Section 18 of chapter 33, p. 109, of the Acts of the Legislature in 1922, and which is now section 2554a-18 of our present Statutes, says: "On a first conviction for violation of any of the provisions of this (liquor prohibition) act, except for a violation of sec. 24 (sec. 2554a-24 [published statute]), and except where the punishment is confinement in the penitentiary, the court shall require the defendant, in addition to the penalty inflicted, to execute bond in a sum not less than one thousand dollars, nor more than five thousand dollars, to be of good behavior for twelve months, and not violate any of the laws of Kentucky relative to the sale, possession, transportation or manufacture of intoxicating liquors, and if the bond be not executed the defendant shall be committed to the county jail in default of such bond for a period of ninety days. The order of the trial court requiring the execution of the peace bond herein provided for shall not be considered a part of the punishment inflicted under this act, but as a security against future violations

of the provisions of this act, and said order shall not be subject to appeal.''

The appellee and plaintiff below, Roy Rhodes, was tried and convicted in the quarterly court of Union county presided over by the appellant and defendant below, W. B. Harris, as county judge of that county, under a charge of unlawfully possessing intoxicating liquor, and, pursuant to the above section, he was required to execute bond, as therein provided, in the sum of $1,000. He subscribed his own name to the bond, conditioned as the statute requires, and the proper form of which is not contested, and tendered it to the defendant as presiding judge of the court in compliance with his order, and he declined to approve it upon the ground that no surety had joined plaintiff in its execution. The latter then filed this action in the Union circuit court against defendant in his official capacity asking that he be prohibited from further incarcerating plaintiff in the county jail for failure to execute the required bond, and which was upon the theory that the tendered one without surety (but subscribed only by plaintiff) was a compliance with the statute, and that it was the mandatory duty of defendant to accept it as executed in that form. Defendant demurred to the petition, which averred in detail the foregoing facts, and the judge of the Union circuit court before whom the cause was pending overruled the demurrer, whereupon defendant declined to plead further, and the prayer of the petition was granted, to reverse which defendant prosecutes this appeal.

It at once will be seen that the sole question for determination is: Whether the bond required by the section of the statute, supra, should be signed and secured by another or others than the defendant in the prosecution, or whether a bond signed by himself alone is a compliance therewith? It is argued, and no doubt correctly so, that a written obligation signed by the principal alone is ordinarily and usually considered in law as a bond; but, in determining the question as presented to us by this record, we should look to the purpose of the Legislature in requiring the bond and what it intended to accomplish thereby, and which is one of the fundamental rules for the interpretation of statutes. The Legislature knew that in perhaps a majority of cases the defendant in such prosecutions was insolvent and many of them were worthless financially, in which cases a bond subscribed and executed by him alone

and without surety would be of no restraining value whatever, since the insolvent principal would not in the least be deterred from continuous violations of the law because of the prospect of judgment against him for the amount of the bond and which could not possibly be realized.

Moreover, the purpose for requiring the bond was not confined alone to the restraining influence of a prospective judgment against the law violator, but there was evidently the further one of enlisting the interest and efforts of some outside and financially responsible third party in seeing to it that his principal in the bond would comply with its terms and to thereby bring about the preventative effect that the Legislature had in mind, and which, no doubt, contributed as much to its purpose in requiring the bond as any other factor, including that of the right of the commonwealth to replenish its exchequer by collecting the amount of the bond in the event it was violated. Such facts, we repeat, are undoubtedly proper to be taken into consideration in determining whether or not the required bond should be executed by one or more sureties, as well as by the principal, although no such express requirement appears in the body of the statute.

Another rule for the interpretation of a statute is that it will not be construed so as to defeat the evident purpose of its enactment and so as to practically nullify it and render it of no avail, unless its language imperatively requires such a construction. In other words, if it may be given two interpretations, one of which would have the effect just indicated, and the other would give it vitality so as to accomplish the evident purpose of the Legislature in enacting it, the latter interpretation will be adopted. That such bonds may be required and their requirement be valid is not even disputed and could not successfully be, since they have been required and upheld by the common law and numerous statutes in this country, including many in this commonwealth in which they were upheld as an appropriate means to prevent crime and which may be verified by consulting any authoritative work on criminal law and the criminal reports from the highest court of every state in the Union. It was in recognition of such well-established right that the Legislature enacted the statute involved, and, if there were no judicial expressions touching its proper interpretation in regard to the specific matter now under consideration,

we still would be inclined, in view of the foregoing considerations, to interpret it as requiring the signature of a surety or sureties as joint obligors with the principal whose future rectitude it was intended to guarantee.

But in the case of Deskins v. Childers, Judge, 195 Ky. 209, 242 S. W. 9, 11, in discussing the same statute, we said: "The present prohibitory statute relating to intoxicating liquors, which became a law on March 22, 1922, and which superseded the act of 1920, by its eighteenth section, provides that the court upon a conviction of a violation of certain provisions of it, shall require the accused to enter into bond *with sureties,* conditioned that he will be of good behavior, and not violate any of the provisions of that law relating to intoxicating liquors for a period of one year." (Our emphasis.) While the court in that opinion did not elaborate or discuss the question, yet it did in fact say that the statute required "the accused to enter into bond with sureties," etc., and which is as much an interpretation as if extended elaboration and discussion had been employed.

In the case of Rice v. Gaines, Judge, 203 Ky. 590, 262 S. W. 945, 946, there was involved this question: Whether or not the defendant could execute the bond at any time during the ninety-day period of his incarceration in jail for failing to do so and before that time expired? The judge of the Boone circuit court held otherwise and declined to accept or approve a tendered bond after defendant had commenced to serve the ninety-day sentence because of his failure to immediately execute it upon conviction. The lower court was of the opinion that, having so failed, the convicted defendant could not thereafter execute the bond because he had been delayed in an effort to procure an acceptable surety or for any other reason. In reversing that judgment, and in holding that defendant should be permitted to execute the bond and be released at any time that he tendered a solvent one before the expiration of his ninety days' incarceration for originally failing to do so, we said: "In practice we know that it is sometimes difficult to furnish a peace bond, and that it sometimes requires time so that a defendant may send out for surety. It often is impossible to obtain sureties on the day of conviction. We apprehend it was not the intention of the Legislature to prevent the execution of the bond if not offered on the day of conviction. The bond may be taken at any time before the end of the 90-day period." The judge of

the trial court was directed to accept the bond and to release the petitioner in that case, it being an original proceeding in this court under the provisions of section 110 of the Constitution to obtain the relief sought. The excerpt from that opinion necessarily holds by undeniable implication that the bond required by the statute supra is one to be executed *with surety*, notwithstanding it, nor the statute, does not so expressly state.

In the case of Allen v. Commonwealth, 140 Ky. 302, 131 S. W. 6, this court gave a similar interpretation to a statute phrased in almost identically the same language as section 2554a-18, supra, of our present statutes, and which is the one involved in this case. In that case the court dealt with subsection 3 of section 2557b of Carroll's Kentucky Statutes, 1915 Edition, relating to the execution of bond by defendant upon his conviction of violating a local option law that was in effect in this commonwealth at that time. The subsection read: "On the second or any subsequent conviction for a violation of said act, or any of its amendments, the court shall require the defendant to execute bond in the sum of two hundred dollars to be of good behavior for the period of twelve months. The court may, in its discretion, increase the amount of the bond, and if the bond is not given the defendant shall be committed to the county jail for a period not exceeding ninety days, to be fixed by the court." The defendant, Allen, therein was indicted a number of times for violating that statute and upon conviction at the trial of part of them he was permitted to execute bond in the sum of $1,000, and the other indictments were filed away. He breached the bond by violating its terms, and suit was instituted against him and his sureties to recover the penal amount of the bond, and it was held that it was competent for the Legislaure to require the bond and that both he and his sureties were liable thereon, although no express requirement that a surety should sign it was contained in the statute.

Moreover, the present section 75 of our Criminal Code of Practice, first enacted in 1924 and amended in 1926, permits a convicted defendant under a felony charge, except where the punishment is death or life imprisonment, to execute bond pending an appeal to this court, and it nowhere expressly requires that a surety or sureties shall sign such bond. In fact its phraseology in that respect is, in substance and legal effect, the same

as that found in the section of the statute here involved, and, if the interpretation contended for by plaintiff's counsel should be given the later statute (the one here involved) it would inevitably follow that the same interpretation should be given section 75 of the Criminal Code of Practice, and we would then have the Legislature saying in that section of the Criminal Code that a convicted felon might remain at large pending his appeal to this court upon no other guaranty for his surrendering himself for punishment, should the judgment be affirmed, than his own written obligation. Manifestly it was never the purpose or the intention of the Legislature in the enactment of section 75 of the Criminal Code of Practice, which is couched, as we have seen, in practically the same language as that we now have under consideration, to permit the convicted felon to so cheaply release himself and to so easily escape his just punishment.

It is therefore our conclusion that the character of bond required by section 2554a-18 is a *secured* one, and that defendant properly declined to approve and accept the one tendered him by plaintiff, which was wholly unsecured, and that the court erred in requiring him to do so by the judgment it rendered.

It is therefore reversed, with directions to set it aside and for proceedings consistent with this opinion.

The whole court sitting.